149 N.J. Super. 536 (1977)
374 A.2d 86
MONTGOMERY ASSOCIATES, PLAINTIFF,
v.
TOWNSHIP OF MONTGOMERY, IN THE COUNTY OF SOMERSET IN THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 1, 1977.
*537 Mr. Gordon C. Strauss, attorney for plaintiff.
Mr. Henry A. Hill, Jr., for defendant (Messrs. Mason, Griffin and Pierson, attorneys).
MEREDITH, J.S.C.
Plaintiff Montgomery Associates seeks to build an apartment complex in Montgomery Township on property in an R-1 zone (single-family residential). It applied for and was denied a variance by the board of adjustment. This proceeding in lieu of prerogative writs challenging that decision was then instituted. It was a two-count complaint attacking both the denial of the variance and the underlying zoning ordinance. The denial of the variance was upheld by this court in its letter opinion dated April 29, 1976. The only issue remaining to be decided is the constitutionality of the Montgomery zoning ordinance.
A plenary trial was held February 28-March 1, 1977. At that hearing Michael Kauker, a planner retained by plaintiff, admitted that Montgomery Township's zoning ordinance provided for its "fair share" of the regional housing needs of low and moderate-income families. He estimated that Montgomery Township, a developing municipality under South Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151, app. dism. and cert. den. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975), with a population of 6,590, covering 32.8 square miles, had to allow for the construction *538 of approximately 1,700 units to meet the prospective need over the next 20 years.
Presently multi-unit dwellings are allowed only in the APT/TH zone, a 459-acre tract of land in the southeastern corner of the township. Kauker estimated that between 2,700 and 3,600 apartment units could be built within this zone. This is more than sufficient to meet the "fair share" obligation of Montgomery Township, even assuming that the available land is never fully developed. See Oakwood at Madison, Inc. v. Madison Tp., 72 N.J. 481 (1977).
Despite this, plaintiff characterized its suit against the zoning ordinance as founded on Mount Laurel criteria. Plaintiff advanced this contention by focusing on the following language from Mount Laurel: "We conclude that every such [developing] municipality must, by its land use regulations, presumptively make realistically possible an appropriate variety and choice of housing." 67 N.J. at 174 (emphasis added). Plaintiff asked that this court interpret the phrase "variety and choice of housing" to mean that a municipality cannot designate just one area of the township for apartment units, but must scatter them throughout the municipality so that apartment dwellers can have a variety in choosing where within the township they will live. Defendant disagreed and moved for an involuntary dismissal at the close of plaintiff's case. While our Supreme Court has not precisely defined the phrase "variety and choice," this court does not feel that Mount Laurel, together with the recent decision in Oakwood at Madison, lends credence to plaintiff's novel argument. Instead, the court views this suit as a dispute over differing planning concepts, instead of reaching the constitutional dimensions of Mount Laurel. Defendant's motion is therefore granted.
The decision in Mount Laurel was premised upon a judicial recognition of the desperate need for low and moderate income housing. 67 N.J. at 158. Where a municipality excludes those individuals who would have a negative impact on the tax base, it exacerbates the critical shortage of decent *539 housing in New Jersey. Thus, Mount Laurel was aimed at reversing the exclusionary effects of fiscal zoning. Oakwood at Madison, supra, 72 N.J. at 491 (Schreiber, J., concurring and dissenting.)
Further insight into the meaning and effect of Mount Laurel can be gleaned from our Supreme Court's decision in Oakwood at Madison, supra. There the court grappled with some of the many questions that have arisen post Mount Laurel. The court directed that trial courts, in reviewing the constitutional validity of a local zoning ordinance, give attention "to the substance of a zoning ordinance under challenge and to bona fide efforts toward the elimination or minimization of undue cost-generating requirements in respect of reasonable areas of a developing municipality." 72 N.J. at 499.
The court, recognizing that in the absence of governmental subsidization private enterprise is unlikely to build housing within the financial reach of low and moderate income families, adopted a "least cost" approach to new construction. Id. at 513. Least cost housing is that housing which is consistent with minimum health and safety requirements, yet unfettered by unnecessary cost-generating requirements. Id. at 512. The logic behind this requirement is the hope that building new housing within the reach of moderate income families will have a beneficial "filtering down" impact on housing for lower income families.
Thus, as our Supreme Court affirmatively states, "Nothing less than zoning for least cost housing will, in the indicated circumstances, satisfy the mandate of Mount Laurel." Oakwood at Madison, supra 72 N.J. at 513 (footnote omitted). The question posed by this law suit is: What is the allowable scope of discretion of local governing bodies in zoning for an appropriate number of least cost housing units? This court believes that despite the judicial activism in this area, where a municipality meets its fair share its planning decisions are entitled to judicial deference.
*540 It is not an answer to say there is ample other land capable of being deployed for lower income housing. The municipality has the option of zoning areas for such housing anywhere within its borders consistent with all relevant considerations as to suitability. There are proponents of scattering lower income housing widely throughout a municipality as well as adherents of segregating such housing in limited areas. * * * The municipal fathers should have the widest latitude of judgment in that regard. [Oakwood at Madison, supra, 72 N.J. at 545]
There is no reason why developing municipalities like Mount Laurel, required by this opinion to afford the opportunity for all types of housing to meet the needs of various categories of people, may not become and remain attractive, viable communities providing good living and adequate services for all their residents in the kind of atmosphere which a democracy and free institutions demand. They can have industrial sections, commercial sections and sections for every kind of housing from low cost and multi-family to lots of more than an acre with very expensive homes. Proper planning and governmental cooperation can prevent over-intensive and too sudden development, insure against future suburban sprawls and slums and assure the preservation of open space and local beauty. [Mount Laurel, supra, 67 N.J. at 190-191].
The affirmative duty to plan and provide for regional needs does not require the municipality to make any specific piece of property available for low or moderate income housing, absent a showing that there are inadequate alternative cites realistically available for that type of development. A municipality must zone in accordance with a comprehensive plan. [Mount Laurel, supra, 67 N.J. at 213-214 (Pashman, J., concurring)]. See also Oakwood at Madison, supra, 72 N.J. at 510-512 (Pashman, J., concurring.)
These quotations are in accordance with the Madison directive that a court, in reviewing a local zoning plan, must look at its substance and the bona fide efforts of the municipality to provide its fair share of least-cost housing. Montgomery's ordinance clearly meets this standard. The designated apartment/townhouse zone is the only area in the township which is already serviced by an existing sewage system. To build multi-unit dwellings in any other area of the township would necessarily entail the additional expense of providing for sewage pipeline extensions and hookups. Additionally, of the eight criteria enumerated by Kauker as important from a planning viewpoint  (1) employment availability, (2) commercial availability, (3) vehicular access, (4) compatibility *541 with surrounding land uses; (5) sewage and water availability, (6) physical appropriateness of land, (7) housing need and (8) dispersal of apartment units throughout the township  Kauker admitted that the APT/TH zone substantially satisfied seven of the above eight criteria. Only number eight, the lack of apartment units scattered throughout the township, is absent.
The court has no hesitation in upholding the Montgomery Township zoning ordinance. Montgomery Township has not attempted to evade and frustrate the intent of the Mount Laurel decision. Indeed, it has moved swiftly to meet its fair share obligations. It has not placed its apartment zone in an inaccessible and unattractive area of the town. See Oakwood at Madison, 72 N.J. 522. Rather, the APT/TH zone borders on the historic community of Rocky Hill, it is within walking distance of the Montgomery Shopping Center on Route 206, and it is only ten minutes away from the center of Princeton. The Millstone Canal, with its attendant recreational facilities, cuts through the zone.
It is the view of this court that since plaintiff has failed to prove a Mount Laurel violation, all that remains is the question whether the zoning plan is arbitrary and capricious. The court feels that all plaintiff has shown is that there is a disagreement over planning theory. As noted earlier, there are substantial factors upon which the township could have based its decision as to the location and concentration of the apartment/townhouse zone. Under these circumstances, the court will not upset the determination made by the municipality. Bow and Arrow Manor, Inc. v. West Orange, 63 N.J. 335 (1973).
The motion for an involuntary dismissal of plaintiff's suit is granted.